**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-16-0000704**
**28-FEB-2020**
**07:55 AM**

NO. CAAP-16-0000704

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

JASON A. SNELLINGS, Plaintiff-Appellant,
v.
JAMIE L. SNELLINGS, Defendant-Appellee

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-D NO. 14-1-7146)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Hiraoka and Wadsworth, JJ.)

In this divorce case, Plaintiff-Appellant Jason A. Snellings (**Jason**)[1] appeals from three post-decree orders entered by the Family Court of the First Circuit:[2]

1. "Order Granting in Part Plaintiff's Motion for Summary Judgment [as to Rule 60(B)(6) Claim Only]" entered on September 27, 2016;

2. "Order Granting in Part and Denying in Part Defendant's Motion for Post-decree Relief Filed October 22, 2015" entered on September 27, 2016; and

3. "Order Awarding Defendant Attorney's Fees and Costs" entered on November 7, 2016.

For the reasons explained below, we affirm all of the family court's orders.

---

[1] The parties are referred to by their given names because they continue to have the same surname.

[2] The Honorable Dyan M. Medeiros presided.

I.

Jason was married to Defendant-Appellee Jamie L. Snellings (**Jamie**). They had two children. Jason filed for divorce on July 18, 2014. Jamie filed an answer. Both parties filed the required statements disclosing their income, expenses, assets, and debts. Jamie's asset and debt statement, filed on December 19, 2014, listed two deposit accounts: a checking account at First Hawaiian Bank with a balance of $16,000, and an account at the Navy Federal Credit Union with a credit balance of $22,000.

Jason and Jamie participated in mediation. On February 23, 2015, they signed a mediated agreement resolving some of the issues in the divorce case (**Mediated Agreement**).

Jason conducted discovery, obtaining documents from First Hawaiian Bank, among others. On May 5, 2015, Jason filed a motion for pre-decree relief including a financial restraining order. Jason's motion alleged that on November 26, 2014, Jamie had withdrawn $65,000 from her First Hawaiian Bank checking account and deposited the funds into an account at Hickam Federal Credit Union — one that was not listed in her asset and debt statement. The family court set Jason's motion for a hearing on June 3, 2015.

Jamie "wanted the court case to be done and . . . was scared over the threat of sanctions" because she failed to disclose assets. On May 29, 2015, Jamie's counsel made a settlement offer to Jason's counsel.

On June 3, 2015, when the hearing on Jason's motion for a financial restraining order was convened, counsel informed the family court that an agreement for a stipulated divorce decree had been reached. Jason and Jamie and their respective counsel signed a typewritten divorce decree that contained handwritten changes. The family court orally granted the divorce "[u]nder the terms as expressed in the divorce decree" and ordered that a typewritten, signed divorce decree be submitted by June 15, 2015.

The family court entered an expedited order on June 10, 2015,[3] that provided:

> 1.   The parties have reach [sic] a full and final settlement of all issues related to the divorce. The terms of the agreement between the parties is set forth in the divorce decree attached hereto as Exhibit "A" to this order.
>
> 2.   [Jason]'s counsel shall prepare a typed divorce decree that includes the handwritten changes in Ex "A" verbatim. The parties and counsel shall sign and submit the decree to court within ten (10) days [of the June 3, 2015 hearing].

On June 12, 2015, the family court approved a request to extend the deadline for filing the stipulated divorce decree until June 19, 2015. By letter dated June 22, 2015, Jason's counsel submitted a proposed decree to the family court. It was signed by Jason and his counsel, but not by Jamie or her counsel.

By letter dated June 28, 2015, Jamie's counsel objected to the proposed divorce decree. The letter stated that Jason failed to disclose his impending deployment to Jamie until the day after the June 3, 2015 hearing, when he also informed Jamie that their two children would live with his parents in Virginia as part of a family care plan he had submitted to his military command.[4] Jamie requested a hearing before the family court.

The family court scheduled a Hawai'i Family Court Rules (**HFCR**) Rule 16 status conference for July 23, 2015. On July 23, 2015, the presiding family court judge continued the status conference to August 4, 2015, so that it could be handled by the same judge who had presided over the June 3, 2015 hearing (when the settlement was placed on the record) and who signed the June 10, 2015 expedited order concerning the stipulated divorce decree.

---

[3]   The Honorable Paul T. Murakami presided over the June 3, 2015 hearing and signed the June 10, 2015 order.

[4]   The stipulated divorce decree gave Jason sole physical custody of the children, subject to Jamie's right of reasonable visitation. The February 23, 2015 Mediated Agreement had called for joint physical custody.

At the HFCR Rule 16 status conference on August 4, 2015,[5] the family court judge summarized the issues:

> [I]n this case there was a hearing on June 3rd that was presided over by myself. It was supposed to be for purposes of an order to show cause filed by [Jason], but that changed into ultimately a full agreement as to the divorce. And that divorce was placed on the record and there was a proposed decree that was signed by all the parties attached to the expedited order for that day. Again that was on June 3rd.
>
> Subsequently [Jason's counsel] had the responsibility to submit <u>the final decree</u> which, as far as I can see, <u>tracks exactly what was submitted to the court on June 3rd.</u> <u>Basically all the handwritten additions were typed nice and</u> <u>neat into the final decree</u>. So it comes down to the decree that was placed on the record is the same decree that was presented to the court for its signature.
>
> The reason we're here today is . . . [Jason], you are currently . . . on deployment with the military pursuant to your service and that allegedly you knew about that well in advance of the proceedings in June, but for reasons that I think are manifestly obvious you decided to not reveal that to [Jamie]. [Jamie]'s claim is that that was a material misrepresentation . . . and it would have affected the negotiations between the parties and maybe come up with a different -- a different result. And that's what's before me.
>
> So the question I guess is -- there's several questions. Number one is should this decree go through as it is. If the decree is allowed to go through, are there any kind of sanctions that should issue. Alternatively if the decree is not allowed to go through, what do we do next?

(Underscoring added.) After hearing arguments from both sides and taking a recess to deliberate, the family court ruled:

> With regard to the issue at bar -- I'll put this as simply as I can -- it amounts to whether or not the court should sign the decree as presented or not. . . . I have some real concerns with what has happened which has brought us to this. However . . . as I've re-reviewed the decree, it was the result of extensive negotiations between the parties with the assistance of attorneys. And in any negotiation because there were attorneys, the attorneys have a responsibility to ask the appropriate questions.
>
> Now arguably this one centers around a fact known but not revealed. However, if confronted, it could have been -- it could have or should have been revealed and wasn't. The question never came up as the famous saying goes. Under the circumstances at bar, at least on the major point, the court is going to sign the decree as presented to the court. However, I would further opine that there's significant questions about where the children are located and why they're located where they are even within the boundaries of

---

[5] Jason, who had already been deployed to Guantanamo Bay, Cuba, appeared by telephone.

> the decree that probably give rise to a post-decree motion or I see on [Jamie]'s behalf. I'll leave it to her to decide whether or not she's going to file one or not.
>
> . . . [T]he court, again while I don't believe this rises to the level necessarily of an ODC report, the court does have some concerns about what has transpired. . . . Attorneys [sic] fees and costs -- that's the sanction -- from June 3rd forward. I need a detailed affidavit from you, [Jamie's counsel].

In response to a question from Jamie's counsel about custody of the children during Jason's deployment, the family court stated:

> If you want to raise a post-decree motion based on anything else that you feel is not covered by the decree, that's up to you and your client. That's without prejudice to any post-decree motions.
>
> . . . .
>
> [Jason] is free to do whatever he thinks is part of the decree. That's what he's done. I'm not ruling on that 'cause that's not particularly before me. The issue before me is whether or not there was a material misrepresentation sufficient to derail the entry of the decree and that's all I'm ruling on in that.

The family court entered an expedited order on August 5, 2015, which stated:

> (1) The court having reviewed the facts and circumstances finds that both parties were represented by counsel, the proposed decree accurately reflects their agreement, and the court will sign the proposed decree submitted by [Jason]'s counsel by R.58 Ltr [sic] dated 6/22/15.
>
> (2) Either party may file a Mtn [sic] for Post-Decree Relief if they believe the timesharing or childcare provisions are inconsistent with the decree, or for any other reason.
>
> (3) [Jamie] is awarded atty's [sic] fees and costs relating to the issue of [Jason]'s departure & deployment for the period from June 3, 2015 to August 4, 2015, ie [sic] [Jamie]'s objections to Decree.

Jason was ordered to renew the registration for a car he owned and to then transfer title to Jamie by the end of the month. The "Stipulated Decree Granting Divorce and Awarding Child Custody" (**Stipulated Decree**) was filed on August 19, 2015. On February 29, 2016, the family court entered an order awarding attorney's fees and costs totaling $5,000 to Jamie, from Jason. No appeal was taken from the August 5, 2015 order, the Stipulated Decree, or the February 29, 2016 fee award order.

On October 22, 2015, Jamie filed the motion at issue in this appeal, which sought to vacate or modify portions of the Stipulated Decree pursuant to HFCR Rule 60(b) **(Rule 60 Motion)**.[6] The Rule 60 Motion also sought modification of the Stipulated Decree due to a material change of circumstances, to enforce the Stipulated Decree against Jason, and to enforce the motor vehicle registration and title transfer order.  The motion was set to be heard on December 2, 2015.

On December 2, 2015, Jason filed a motion to dismiss Jamie's Rule 60 Motion or to stay proceedings pursuant to the Servicemembers Civil Relief Act, 50 U.S.C. §§ 3901-4043 **(Motion to Dismiss)**.[7]  The motion was set to be heard on December 10, 2015.

During the December 2, 2015 hearing on Jamie's Rule 60 Motion, the family court[8] addressed Jason's counsel:

> [F]rankly, the Court has very little trust in terms of your client's actions in this case thus far.
>
> . . . .
>
> What the Court is concerned about are the allegations that a fraud was perpetrated on the Court.
>
> . . . .

---

[6]     HFCR Rule 60, titled "Relief From Judgment or Order," provides in relevant part:

> **(b)    Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud.**  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from any or all of the provisions of a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (3)    fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; [or]
>
> . . . .
>
> (6)    any other reason justifying relief from the operation of the judgment.

[7]     Jason's Motion to Dismiss incorrectly cites the Servicemembers Civil Relief Act.

[8]     The Honorable Dyan M. Medeiros presided over the December 2, 2015 hearing and all further proceedings at issue in this appeal.

6

> That's what the Court is concerned about, that
> information pertinent to settlement negotiations and
> relevant to settlement negotiations was intentionally
> withheld.

The family court ultimately continued the hearing because Jamie's Rule 60 Motion had not been timely served on Jason's counsel, and because the Servicemembers Civil Relief Act issue had to be addressed first (Jason was still deployed). An order setting the hearing on Jason's Motion to Dismiss for December 10, 2015, and continuing the hearing on Jamie's Rule 60 Motion to December 23, 2015, was entered.

During the December 10, 2015 hearing on Jason's Motion to Dismiss, the family court stated:

> [M]y understanding of the case, having reviewed the motion,
> is that the essence of the fraud claim is that [Jason's]
> deployment was not disclosed [to Jamie] prior to the time
> the agreement [for the stipulated divorce decree] was
> reached.
>
> . . . .
>
> The intention was to withhold information to get the
> agreement he wanted is what it's -- it sounds like you're
> telling me.
>
> [JASON'S COUNSEL]: No, I don't believe that's the
> case.
>
> THE COURT: It may have been because he wanted to
> ensure his children were safe and protected and all of that
> stuff, but at the heart of it, it sounds like he withheld
> information because he felt that would benefit his position.

The family court denied Jason's request for a stay, granted Jason's request to address the requested dismissal in connection with the hearing on Jamie's Rule 60 Motion, vacated the December 23, 2015 hearing date on Jamie's Rule 60 Motion, set an extended hearing on the Rule 60 Motion for April 15, 2016, and ordered the children to be returned to Hawai'i after the start of their winter school break and placed into Jamie's sole custody until Jason returned from deployment, after which the parties were to resume the time-sharing schedule stated in the Stipulated Decree, pending the extended hearing. A written order was entered on December 10, 2015.

On March 21, 2016, Jason filed a motion for summary judgment **(Jason's MSJ)**. Jason argued that the relief sought by

Jamie's Rule 60 Motion was barred by the doctrine of res judicata, and that HFCR Rule 60(b) did not apply because Jason's alleged misconduct was known to Jamie and to the family court before entry of the Stipulated Decree. Jason's MSJ was also set to be heard on April 15, 2016.

At the extended hearing on April 15, 2016, the family court orally denied Jason's MSJ as to Jamie's Rule 60(b)(3) (fraud) claim. A written order was entered on May 12, 2016. The family court then received testimony from Jamie. The hearing was continued to July 1, 2016. At the July 1, 2016 hearing the family court received testimony from Jamie and Jason. After hearing arguments from counsel the family court orally granted Jason's Motion to Dismiss Jamie's HFCR Rule 60(b)(6) ("any other reason") claim, partially granted Jamie's Rule 60 motion, and announced its intention to award attorney's fees and costs to Jamie.

On September 27, 2016, the family court entered its "Order Granting in Part Plaintiff's Motion for Summary Judgment [as to Rule 60(b)(6) Claim Only]." It is not clear why Jason is appealing from this order, because it _grants_ Jason's motion for summary judgment on Jamie's HFCR Rule 60(b)(6) claim and states that the family court's ruling on Jamie's HFCR Rule 60(b)(3) claim "shall be set forth in a separate order."[9]

On September 27, 2016, the family court also entered its "Order Granting in Part and Denying in Part Defendant's Motion for Post-decree Relief Filed October 22, 2015." That order granted Jamie's motion based on HFCR Rule 60(b)(3) and denied Jamie's motion based on HFCR Rule 60(b)(6). The order stated:

> It is undisputed that the parties reached and signed a mediation agreement in February 2015 addressing the issues of legal custody, time sharing, and a visitation schedule. The terms in the mediation agreement on these specific issues were all consistent with the terms set forth in the final Divorce Decree on those same issues. The issues agreed to at mediation were made prior to [Jason] receiving deployment orders, prior to the 6/3/15 settlement agreement between the parties on the divorce, and prior to any motions being filed.

---

[9] Jamie has not cross-appealed from the denial of her requested relief under HFCR Rule 60(b)(6).

. . . .

> [Jamie]'s request for relief that custody and visitation provisions in the Divorce Decree be set aside is GRANTED in part and DENIED in part as follows: The following provisions in the Divorce Decree shall remain unchanged: Paragraph 4A "Legal Custody", Paragraph 5 "Physical Custody and Timesharing", Paragraph 5A "Mother and Father on Oahu", and Paragraph 5F "Right of First Refusal". The following provisions in the Divorce Decree related to child custody and visitation are hereby set aside: Paragraphs 5B "Mother and Father in Different Localities", 5C "Reports and Notices", 5D "Notification of Medical Problems and/or Emergencies", 5E "Extracurricular Activities and Expenses", 5G "Relatives Timesharing", 5H "Travel", 5I "Travel Expenses", 5J "Children's Passports", 5K "Relocation", 5L "Telephone, written and electronic contact", 5M "Protection From Parental Disputes", and 6 "Family Care Plan" is specifically included in those provisions that are hereby set aside.

On November 7, 2016, the family court entered its "Order Awarding Defendant Attorney's Fees and Costs." The family court awarded attorney's fees and costs totaling $12,000 to Jamie, from Jason.

This appeal followed.[10]

## II.

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

The family court's grant or denial of a HFCR Rule 60(b) motion is reviewed for abuse of discretion. LaPeter v. LaPeter, 144 Hawaiʻi 295, 304, 439 P.3d 247, 256 (App. 2019).

---

[10] Jason filed a notice of appeal on October 22, 2016, after the family court announced its intent to award attorney's fees to Jamie but before entry of the written order. Rule 4(b)(4) of the Hawaiʻi Rules of Appellate Procedure provides that "[a] notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be deemed to have been filed on the date such judgment or order is entered." Jason also filed an amended notice of appeal on November 23, 2016, within thirty days after entry of the family court order awarding attorney's fees and costs to Jamie, which was the order ending these proceedings, leaving nothing further to be accomplished. Familian Nw., Inc. v. Cent. Pac. Boiler & Piping, Ltd., 68 Haw. 368, 370, 714 P.2d 936, 937 (1986) ("Final order means an order ending the proceedings, leaving nothing further to be accomplished.") (cleaned up).

The family court's findings of fact are reviewed under the "clearly erroneous" standard. Fisher, 111 Hawai'i at 46, 137 P.3d at 360. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made. Id. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Id. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Id.

The family court's conclusions of law are ordinarily reviewed de novo, under the right/wrong standard, "and are freely reviewable for their correctness." Fisher, 111 Hawai'i at 46, 137 P.3d at 360. However, when a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the court's conclusions are dependent on the facts and circumstances of each individual case. Estate of Klink ex rel. Klink v. State, 113 Hawai'i 332, 351, 152 P.3d 504, 523 (2007). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Id.

## III.

Jason's opening brief raises three points of error. The following findings of fact were not challenged and are binding on the parties and this court, see Bremer v. Weeks, 104 Hawai'i 43, 63, 85 P.3d 150, 170 (2004) ("Findings of fact that are not challenged on appeal are binding on the appellate court.") (cleaned up):

> 6. In March of 2015, [Jason] received temporary additional duty assignment orders ("TAD orders") notifying him that he would be sent to Cuba on or about June 8, 2015 with an estimated return date of March 8, 2016. . . . In other words, [Jason] was to be on temporary additional duty ("TAD") away from Hawai'i for approximately nine (9) months. Despite the fact that the parties still had custody and timesharing issues to resolve, [Jason] did not disclose his

TAD orders to [Jamie] when he received them or within a reasonable amount of time thereafter.

7.    On June 3, 2015, while at Court for a hearing, the parties reached an agreement settling all of the issues in their divorce.  The parties' agreement was consistent with the February 23, 2015 agreement reached in mediation and also addressed the parties' remaining issues.  Among other things, on June 3, 2015, the parties agreed that [Jason] would be awarded sole physical custody of the children, to a timesharing schedule for times when one party resided outside of Oʻahu, and to [Jason]'s right to designate who would care for the children when he deployed. At the time the parties reached these agreements, [Jason] still had not told [Jamie] that he was scheduled to leave Hawaiʻi pursuant to his TAD orders.

.    .    .    .

9.    The June 3, 2015 hearing constituted the Family Court's adjudication of the parties' divorce case although the parties were not yet divorced because a final Divorce Decree had not been entered by the Court.[11]

10.    The next day, June 4, 2015, [Jason] notified [Jamie] of his TAD orders, told her that he and the children were leaving Hawaiʻi on June 6, 2015, and told her that he was sending the children to live with his parents in Virginia for the duration of his TAD.

11.    Thereafter, [Jamie] discovered that on June 2, 2015, [Jason] had notified the children's schools that the children's last day of school would be June 3, 2015 and that they were to be permanently released as they were moving to Virginia. . . .    [Jason] had not disclosed this notification to [Jamie] prior to the parties' June 3, 2015 agreement at Court.

12.    [Jamie] also discovered that on May 26, 2015 [Jason] had arranged for a 16 foot storage pod to be delivered to his address on May 30, 2015. . . .

13.    On June 6, 2015, [Jason] left Hawaiʻi with both children and dropped them off at his parent's house in Virginia.

(Footnote added.)

## A.    Jamie's Rule 60 Motion was not barred by the doctrine of res judicata.

Jason first contends that Jamie's Rule 60 Motion was barred by the doctrine of res judicata, citing Bremer v. Weeks, 104 Hawaiʻi 43, 85 P.3d 150 (2004).[12]  In that case the Hawaiʻi Supreme Court explained:

---

[11]    Although arguably a conclusion of law, if challenged it would be affirmed for the reasons explained below.

[12]    Jason's opening brief incorrectly cites Bremer and incorrectly describes language from that opinion.

11

> Res judicata, or claim preclusion, and collateral estoppel, or issue preclusion, are doctrines that limit a litigant to one opportunity to litigate aspects of the case to prevent inconsistent results and multiplicity of suits and to promote finality and judicial economy. . . .
>
> Claim preclusion . . . prohibits a party from relitigating a previously adjudicated cause of action.  Moreover, the judgment of a court of competent jurisdiction is a bar to <u>a new action in any court</u> between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided.

<u>Id.</u> at 53, 85 P.3d at 160 (cleaned up) (underscoring added). Jason argues that Jamie raised Jason's nondisclosures to the family court before entry of the Stipulated Decree, and her failure to appeal from the Stipulated Decree makes it final and binding upon her.

Jamie's Rule 60 Motion was not barred by res judicata. Jamie did not file "a new action" to relitigate the fraud issue; Jamie's motion was appropriately filed in the same action in which the Stipulated Decree was entered.  <u>Cf.</u> <u>Ainamalu Corp. v. Honolulu Transp. & Warehouse Corp.</u>, 56 Haw. 362, 362, 537 P.2d 17, 18 (1975) (indicating that Hawaiʻi Rules of Civil Procedure Rule 60(b) may be used to modify or set aside a stipulated judgment on the ground of fraud, mistake, or misrepresentation).  The Stipulated Decree in this case was, as its title implies, the result of a settlement.  The Hawaiʻi Supreme Court has held:

> [S]ettlement agreements are simply a species of contract and, thus, are governed by principles of contract law. Consequently, as with contracts, settlement agreements induced by either a fraudulent or material misrepresentation are voidable by the defrauded party because [they have] not freely bargained but [have] been induced to settle by the other party.  In other words, a plaintiff who was induced to enter into a settlement agreement by fraudulent or material misrepresentations may obtain a decree rescinding or cancelling the agreement <u>ab initio</u>.  The result of rescission is to return both parties to the status quo ante, <u>i.e.</u>, each side is to be restored to the property and legal attributes that it enjoyed before the contract was entered and performed.

<u>Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.</u>, 116 Hawaiʻi 277, 288, 172 P.3d 1021, 1032 (2007) (cleaned up). Because the Stipulated Decree was entered pursuant to a settle-

ment, a motion pursuant to HFCR 60(b)(3)[13] was an appropriate way for Jamie to seek relief because of Jason's alleged fraud.

**B.    June 3, 2015 was the date upon which the parties recited, and the family court approved, the settlement-on-the-record.**

Jason next contends that he disclosed his deployment, and that his command was sending their children to Virginia to live with Jason's parents, to Jamie on June 4, 2015.  The family court was informed of Jason's omissions during the HFCR Rule 16 status conference on August 4, 2015, yet it still entered the Stipulated Decree on August 19, 2015.  Jason argues that Jamie's Rule 60 Motion should have been denied because it was "based upon facts that were known to [Jamie] and the Court prior to entry of the [divorce d]ecree."  Jason argues that finding of fact no. 23 is clearly erroneous:

> 23.    The August 5, 2015 Order clearly states that a post-decree motion may be filed for "any other reason" which would include a post-decree motion filed pursuant to HFCR Rule 60(b).

This finding is supported by substantial evidence because the August 5, 2015 order does in fact state that "Either party may file a mtn [sic] for Post-Decree Relief . . . for any other reason."  The finding was not clearly erroneous.

The family court also made the following conclusions of law in connection with Jamie's Rule 60 Motion:

> 6.    The prior adjudication occurred on June 3, 2015 when the case was settled, the settlement terms were placed on the record, the Court approved and adopted that agreement, and the parties were ordered to submit a final, typed copy of the Divorce Decree for entry by the Court.  The hearing on June 3, 2015 adjudicated the parties' divorce case.
>
> 7.    The August 4, 2015 conference/hearing was not an adjudication on the merits of [Jamie's] fraud claims although her fraud claims and the facts that had occurred after June 3, 2015 were discussed.  No evidentiary hearing was held, no sworn affidavits or testimony was received, and no exhibits were received.  Accordingly, neither the August 5, 2015 Order nor the Divorce Decree (filed on August 19, 2015) were final judgments on the merits of the fraud claims raised in [Jamie's] Motion for Post-Decree Relief.

---

[13]    See note 6.

Under the facts of this case, the family court correctly concluded that the relevant date is when the settlement was placed on the record and approved by the family court, not the filing date of the Stipulated Decree. On June 3, 2015, before Jason disclosed his deployment and family care plan to Jamie: Jason and Jamie and their respective counsel informed the family court that an agreement for a stipulated divorce decree had been reached; Jason and Jamie and their respective counsel signed a typewritten divorce decree containing handwritten changes that became part of the record; and the family court orally granted the divorce "[u]nder the terms as expressed in the divorce decree" and ordered that a typewritten, signed divorce decree be submitted by June 15, 2015. All that remained to be done was the ministerial task of re-typing the stipulated divorce decree and presenting it to the family court for filing. The HFCR Rule 16 conference conducted on August 4, 2015, was not an adjudication of Jamie's fraud claim, but a status conference to follow up on the family court's June 3, 2015 directive that the parties "prepare a typed divorce decree that includes the hand-written changes."

During the August 4, 2015 status conference the family court stated:

> [Jason's counsel] had the responsibility to submit the final decree which, as far as I can see, tracks exactly what was submitted to the court on June 3rd. Basically all the hand-written additions were typed nice and neat into the final decree. So it comes down to the decree that was placed on the record is the same decree that was presented to the court for its signature.

The family court filed the Stipulated Decree because it accurately set forth the parties' settlement agreement put on the record and approved by the court during the June 3, 2015 proceeding, and further documented in the family court's June 10, 2015 expedited order.

Jason did not tell Jamie about his impending deployment and family care plan before June 3, 2015; accordingly, an HFCR Rule 60(b)(3) motion[14] was an appropriate way for Jamie to chal-

---

[14]    See note 6.

lenge the validity of the settlement based on Jason's alleged fraud.

### C. The family court did not abuse its discretion by awarding attorney's fees and costs to Jamie.

Hawai'i follows the traditional American rule that ordinarily, attorney's fees cannot be awarded as damages or costs where not so provided by statute, stipulation or agreement. Salvador v. Popaa, 56 Haw. 111, 111, 530 P.2d 7, 9 (1974). Hawaii Revised Statutes (**HRS**) § 580-47 (Supp. 2015) provides, in relevant part:

> (f) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

The family court's award of attorney's fees is reviewed for abuse of discretion. Hamilton v. Hamilton, 138 Hawai'i 185, 210, 378 P.3d 901, 926 (2016).

The family court made the following findings of fact in connection with Jamie's Rule 60 Motion:

> 29. [Jason's] TAD orders and imminent departure from Hawai'i were material facts that should have been disclosed to [Jamie] and her counsel prior to June 3, 2015.
>
> 30. [Jason] did not disclose his TAD orders to [Jamie] until June 4, 2015.
>
> 31. [Jason] knowingly and intentionally failed to disclose his TAD orders and his plans to send the children to Virginia to [Jamie] until June 4, 2015 to induce her to agree to the settlement terms that he wanted.
>
> 32. Because the Divorce Decree simply reflects the terms of the June 3, 2015 agreement, it does not address [Jamie's] claim of fraud.

15

> 33. Although [Jamie's] claim of fraud was discussed at the August 4, 2015 hearing, it was not litigated, no evidence was taken, and therefore there was no adjudication "on the merits" of [Jamie's] fraud claim.

These findings are supported by substantial evidence and are not clearly erroneous. They also form a reasonable basis for the family court's conclusion of law no. 21:

> 21. It was just and equitable under HRS § 580-47 to award [Jamie] $12,000.00 in attorney's fees and costs incurred in connection with her Motion for Post-Decree Relief (including defending against [Jason's] numerous motions) and the post-decree litigation in this case. This amount is not duplicative of the $5,000.00 in attorney's fees and costs previously awarded by the Court for the period from June 3, 2015 through August 4, 2015.

This conclusion of law is supported by the family court's findings of fact and reflects an application of the correct rule of law. Jason does not challenge the amount of the award. The attorney's fee order is affirmed. Klink, 113 Hawai'i at 351, 152 P.3d at 523 (noting that a conclusion of law supported by trial court's findings of fact and reflecting application of correct rule of law will not be overturned).

## IV.

Based upon the foregoing, the "Order Granting in Part Plaintiff's Motion for Summary Judgment [as to Rule 60(B)(6) Claim Only]" entered on September 27, 2016, the "Order Granting in Part and Denying in Part Defendant's Motion for Post-decree Relief Filed October 22, 2015" entered on September 27, 2016, and the "Order Awarding Defendant Attorney's Fees and Costs" entered on November 7, 2016, are affirmed.

DATED: Honolulu, Hawai'i, February 28, 2020.

On the briefs:

Steven J. Kim,
for Plaintiff-Appellant.

Dominique Tansley,
for Defendant-Appellee.

Presiding Judge

Keith K. Hiraoka,
Associate Judge

Clyde J. Wadsworth
Associate Judge

16